**PACIFIC LEGAL FOUNDATION, a nonprofit California corporation, Plaintiff,**

v.

**James G. WATT, Secretary of the Interior; Administrator of the Environmental Protection Agency; Sonia Crow, Regional Administrator for Region IX of the Environmental Protection Agency; Director of Fish and Wildlife Service; and The United States Environmental Protection Agency, Defendants.**

**No. CV 78–3464–AAH(SX).**

United States District Court, C. D. California.

March 16, 1982.

David M. Shell, Pacific Legal Foundation, Sacramento, Cal., for plaintiff.

Barry Neuman, Washington, D. C., Susan M. Schectman, San Francisco, Cal., David C. Cannon, Dean K. Dunsmore, Washington, D. C., Roger E. West, Los Angeles, Cal., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, Chief Judge.

### FINDINGS OF FACT

1. Plaintiff Pacific Legal Foundation (PLF) is a nonprofit corporation organized under the laws of the State of California. PLF is a membership organization. John B. Kilroy, Sr., is a member of PLF who lives and works in the area to be impacted by the Los Angeles/Orange County Metropolitan Area (LA/OMA) projects. PLF brought suit on behalf of itself and its members. PLF and its members will be injured by the actions of defendants.

2. Defendant James G. Watt is the Secretary of the Interior. As such he has primary responsibility for enforcement of the provisions of the Endangered Species Act (ESA) and regulations issued pursuant thereto. 16 U.S.C. § 1540(e)(1).

3. Defendant Anne M. Gorsuch is the Administrator of the United States Environmental Protection Agency (EPA) and as such is responsible for insuring that EPA complies with the provisions of ESA, the National Environmental Policy Act (NEPA), the Clean Water Act (CWA), and the regulations issued pursuant thereto.

4. Defendant EPA is a federal agency as that term is used in ESA and, as such, is required to comply with the provisions of ESA and regulations issued pursuant thereto.

5. Defendant Sonia Crow is the Regional Administrator of Region IX of EPA. As such, she is directly responsible for authorizing, funding, and carrying out EPA programs and activities in LA/OMA. She is also directly responsible for implementation of the provisions of CWA § 402, 33 U.S.C. § 1342 in the State of California except to the extent administration of the National Pollutant Discharge Elimination System (NPDES) program has been delegated to the State of California pursuant to 33 U.S.C. § 1342(b).

6. Defendant Robert A. Jantzen is Director of the United States Fish and Wildlife Service (FWS) and, as such, is directly responsible for insuring that FWS complies with the provisions of ESA and for administration of ESA and regulations issued pursuant thereto.

7. Defendants, through their attorneys, were given actual notice of violations of ESA with respect to the sludge management programs authorized and funded for Los Angeles County and Orange County at the hearing on plaintiff's motion for issuance of a contempt citation held March 9, 1981, and written notice in plaintiff's pleadings filed on said motion.

8. Defendants were given written notice of violations of CWA for failure to take action to issue or deny a new national pollutant discharge elimination system (NPDES) permit for the Hyperion Wastewater Treatment Plant (Hyperion) on August 7, 1979, and October 11, 1979.

9. Defendants were given written notice of violations of ESA with respect to the sludge management program authorized and funded at Hyperion on May 26, 1978, and August 16, 1978.

10. Plaintiff and defendants entered into a stipulated briefing schedule and stipulated that defendants' motion would be treated as one for summary judgment.

11. All parties had notice and an opportunity to present materials and argument on matters included within the motions before the Court.

### Terminal Island

12. On January 23, 1981, EPA defendants awarded a CWA construction grant to the City of Los Angeles for a mechanical composting demonstration project to be located at the Terminal Island Treatment Plant.

a. Defendants' Memorandum In Support of Motion to Dismiss and to Strike or, In the Alternative, for Summary Judgment (Defendants' Memorandum) at 5.

b. Deposition of Annie M. Godfrey at 39.

13. Among the tasks to be undertaken by the City of Los Angeles with respect to

the demonstration project at Terminal Island is the testing of the feasibility of using belt filter presses to dewater undigested waste activated sludge.

a. Exhibit K to Defendants' Memorandum, Plan of Study Terminal Island Treatment Plant (TITP) Sludge Composting Facilities (Plan of Study), at 223.

14. The demonstration project at Terminal Island will require addition of mechanical composting facilities and equipment to the plant site and the use of land at Terminal Island for composting.

a. TITP Plan of Study at 222.

b. Deposition of Frederick Lief at 40.

15. The technology being developed through the Terminal Island project is for use at the Hyperion Treatment Plant and implementation of the composting alternative described in the LA/OMA environmental impact statement to be located at the west end of Los Angeles International Airport (LAX).

a. Deposition of Annie M. Godfrey at 38.

16. The TITP site has been identified as the habitat for the California Brown Pelican, the California Least Tern, and Beldings Savannah Sparrow.

a. Exhibit L to Plaintiff's Memorandum In Support of Motion for Issuance of Contempt Citation at 79, Draft Environmental Impact Statement (EIS), City of Los Angeles Wastewater Facilities Plan, September 1977, at II–145.

17. The California Brown Pelican is listed as an endangered species by FWS.

a. 50 C.F.R. § 17.11, 35 Fed.Reg. 16,047 (1970).

18. The California Least Tern is listed as an endangered species by FWS.

a. 50 C.F.R. § 17.11 35 Fed.Reg. 16,047 (1970).

19. The Beldings Savannah Sparrow is listed as an endangered species by FWS.

a. 50 C.F.R. § 17.11.

20. Prior to awarding the CWA construction grant for the Terminal Island project, EPA defendants did not prepare and circulate for comment an EIS or other environmental assessment of the impacts the project may have on the environment.

21. Prior to awarding the CWA construction grant for the Terminal Island project, EPA defendants did not:

a. request of the Secretary of the Interior information whether any species which is listed or proposed to be listed may be present at the proposed project;

b. conduct a biological assessment for the purpose of identifying any endangered species which is likely to be affected by such project; and

c. in consultation with and with the assistance of the Secretary of the Interior, insure that the project authorized and funded by EPA would not jeopardize endangered species or such species' habitat.

### Los Angeles/Orange County Metropolitan Area

22. In April, 1980, EPA defendants circulated for comment the draft EIS for the sludge management program for LA/OMA.

23. In October, 1980, EPA defendants circulated for comment the LA/OMA final EIS.

24. On December 5, 1980, EPA defendants approved the LA/OMA final EIS.

25. The LA/OMA sludge management program is for the purpose of developing and implementing methods and techniques for handling and disposing of sewage sludge generated at the City of Los Angeles' Hyperion treatment plant, the county of Los Angeles' Joint Water Pollution Control Plant, and the Orange County Sanitation District.

26. The EIS assessed the draft facilities plan for the LA/OMA sludge management program as having no adverse effect on the environment.

27. The December 5, 1980, decision document describes the alternatives considered as having prospects for adoption, implementation, and further funding by EPA.

28. Prior to approving the LA/OMA final EIS and the facilities plan, EPA defend-

ants did not initiate ESA consultation on any of the project alternatives described as having implementation potential.

29. For the Hyperion treatment plant, composting of sludge at the western end of LAX and a system for energy recovery (HERS) are the two alternatives identified as having high implementation potential.

30. The LA/OMA final EIS does not present the present method or other reasonable ocean based disposal alternatives to the alternatives identified as having high implementation potential.

31. The impacts on endangered species of the reasonable disposal alternatives not presented in the EIS have not been considered by defendants in any other manner which complies with ESA.

32. Trucking of dewatered sludge to landfill from Hyperion was determined not to be feasible.

33. The LAX composting alternative will be located on the habitat of the El Segundo blue butterfly.

34. The El Segundo blue butterfly is listed by FWS as an endangered species.

a. 50 C.F.R. § 17.11.

35. EPA defendants, on December 8, 1980, awarded a CWA construction grant to the City of Los Angeles for the HERS alternative.

36. Prior to awarding the CWA construction grant for development of the LA/OMA project at Hyperion, EPA defendants did not initiate consultation with FWS.

37. The HERS alternative will require construction on the Hyperion site, including a combined cycle power generation facility, waste activated sludge thickening facilities, sludge blending tanks, emergency liquid storage area, sludge dewatering facilities, wet cake storage facilities, dehydration facilities, dehydrated pelletized sludge storage facilities, thermal processing facilities, and truck loading facilities for char/ash and residue hauling to landfill. LA/OMA Facilities Plan at VI–10.

38. Hyperion is adjacent to the habitat of the El Segundo blue butterfly.

39. Prior to awarding the CWA construction grant on December 8, 1980, EPA defendants did not initiate consultation with FWS to insure that the HERS alternative would not jeopardize any listed species.

a. Deposition of William Sweeney at 50.

b. Deposition of Annie M. Godfrey at 35–36.

40. Prior to awarding the CWA construction grant on December 8, 1980, FWS did not issue a biological opinion on the HERS alternative.

a. Deposition of William Sweeney at 50.

b. Deposition of Annie M. Godfrey at 35–36.

41. In assessing the environmental consequences of the Hyperion alternatives, EPA defendants did not compare the impacts on endangered species associated with the LAX composting and HERS alternative with the impacts associated with continued ocean discharge of sludge to the ocean as currently practiced.

42. In assessing the environmental impacts associated with the HERS alternative in the LA/OMA EIS, EPA defendants did not assess the impacts operation of the new facilities would have on endangered species, including potential adverse impacts associated with the construction of the facilities and impacts associated with increased air pollution from operation of the facilities.

*Clean Water Act*

43. In November, 1974, EPA defendants issued NPDES Permit No. CA0109991 to the City of Los Angeles for the Hyperion treatment plant. On or about August 15, 1975, EPA defendants reissued the Hyperion permit with an expiration date of February 1, 1977. The expiration date of the Hyperion permit was extended on June 2, 1977, to December 17, 1979.

44. Since December 17, 1979, EPA defendants have not taken action to issue or deny a new NPDES permit for Hyperion, or to extend the expiration date beyond December 17, 1979.

45. Any conclusions of law, to the extent they are deemed to be findings of fact, are incorporated into these findings of fact.

## CONCLUSIONS OF LAW

1. Any findings of fact, to the extent they are deemed to be conclusions of law, are incorporated into these conclusions of law.

2. There are no genuine issues of material fact in dispute.

3. Jurisdiction to hear plaintiff's claims arising under ESA, 16 U.S.C. §§ 1531, *et seq.*, is specifically conferred upon the district courts by 16 U.S.C. § 1540(c).

4. Jurisdiction to hear plaintiff's claim arising under CWA, 33 U.S.C. §§ 1251, *et seq.*, is specifically conferred upon the district courts by 33 U.S.C. § 1365. *Rite-Research Improves the Environment v. Costle*, 650 F.2d 1312 (5th Cir. 1981).

5. Plaintiff gave notice to defendants as required by 16 U.S.C. § 1540(g)(2)(A)(i) of the alleged violations of ESA. Exhibits A and B to complaint; Exhibit No. 2 to Plaintiff's Opposition to Defendants' Motion to Dismiss and to Strike or, in the Alternative, for Summary Judgment; Transcript of Hearing on Plaintiff's Motion for Contempt Citation, March 9, 1981.

6. Plaintiff gave notice to defendants as required by 33 U.S.C. § 1365(b). Exhibits C and D to complaint.

7. A motion to dismiss for failure of the pleading to state a claim upon which relief can be granted shall be treated as one for summary judgment and disposed of as provided in Federal Rules of Civil Procedure (F.R.C.P.), Rule No. 56, if matters outside the pleading are presented and not excluded by the Court. F.R.C.P., Rule No. 12(b). *Faulkner v. Federation of Preschool and Community Education, Inc.*, 564 F.2d 327, 328 (9th Cir. 1977).

8. Judgment shall be rendered forthwith if the pleadings, depositions, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. F.R.C.P., Rule No. 56(c).

9. Summary judgment may be granted to the nonmoving party. *Betts v. Coltes*, 467 F.Supp. 544, 546 (D.C. Hawaii, 1979); *United States v. State of California*, 403 F.Supp. 874, 902 (E.D.Cal.1975); *Factora v. District Director of United States Immigration and Naturalization Service*, 292 F.Supp. 518, 521 (C.D.Cal.1968); Wright & Miller, Federal Practice and Procedure Civil § 2720 pp. 467–8, p. 470 (West, 1973).

10. An affidavit submitted pursuant to F.R.C.P., Rule No. 56(e) must be based upon personal knowledge of the affiant and show affirmatively that the affiant is competent to testify to the matters stated therein.

11. Affidavits which do not conform to the requirements of F.R.C.P., Rule No. 56(e) are subject to a timely motion to strike. *United States for the Use and Benefit of Austin v. Western Electric Co.*, 337 F.2d 568 (9th Cir. 1964).

### Endangered Species Act

12. All federal agencies are required, in consultation with the Secretary, to insure that any action authorized, funded, or carried out by such agency is not likely to jeopardize the continued existence of any endangered or threatened species unless such agency has been granted an exemption under 16 U.S.C.A. § 1536(h). ESA § 7(a)(2), 16 U.S.C. § 1536(a)(2).

13. All federal agencies are required to follow the procedural requirements set forth in ESA § 7(c), 16 U.S.C. § 1536(c), prior to authorizing, funding, or carrying out any activity or program.

14. Regulations implementing ESA § 7, found at 50 C.F.R. § 402.02 (1978), defines activities or programs to mean all actions of any kind authorized, funded, or carried out by federal agencies, including granting of grants-in-aid, permits, or actions directly or indirectly causing modifications to the land, water, or air.

15. The award of a CWA construction grant by EPA is an agency action which must conform to the requirements of ESA.

16. The issuing of an NPDES permit by EPA is an agency action which must conform to the requirements of ESA.

17. EPA regulations found at 40 C.F.R. § 6.302(g) (1980) require EPA to comply with ESA and to integrate and implement to the greatest practicable extent ESA procedures during the implementation of the environmental review process under the construction grants program of Title II of CWA. 40 C.F.R. §§ 6.300 and 6.500, *et seq.*

18. EPA regulations require that prior to awarding grant assistance for any project, the Regional Administrator shall determine that the treatment works will comply with all requirements of federal environmental laws and regulations. 40 C.F.R. §§ 35.925–14 and 40.300.

19. EPA regulations require that an EIS be issued when the treatment works will significantly affect or will be located on the habitat of an endangered or threatened species. 40 C.F.R. § 6.506(a)(3).

20. Unless an EIS considers the impacts on endangered species from all reasonable alternatives to the preferred project, the EIS is inadequate to support the consultation requirement of ESA.

21. The LA/OMA final EIS does not consider all reasonable ocean based disposal alternatives, including the present disposal method.

22. The Terminal Island mechanical composting demonstration project, for which EPA awarded a CWA construction grant, is a project requiring demonstrated compliance with ESA.

23. EPA defendants have not complied with the requirements of ESA prior to awarding the Terminal Island grant and thus are in violation of ESA § 7.

24. The award of CWA construction grants for the Hyperion LAX composting and HERS sludge management projects are activities or programs which require demonstrated compliance with ESA.

25. EPA defendants have not complied with the requirements of ESA prior to awarding the CWA construction grant for HERS and thus are in violation of ESA § 7. EPA defendants have not complied with the requirements of ESA regarding the LAX composting alternative.

26. EPA defendants have not complied with the requirements of ESA regarding the sludge management programs at Los Angeles County and Orange County.

*Clean Water Act*

27. CWA § 301(a) prohibits the discharge of any pollutant unless pursuant to an NPDES permit.

28. NPDES permits may be issued for a maximum fixed term five-year period. CWA § 402(b)(1)(B).

29. The purpose of CWA § 402(b)(1)(B) is to insure that at intervals not greater than five years the terms and conditions of a permit be subject to reevaluation by EPA and that the public have an opportunity to participate in this reevaluation. *See* Exhibit No. 2 to Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment and Motion to Strike Affidavit, Decision of the General Counsel on Matters of Law No. 66; *see also Costle v. Pacific Legal Foundation*, 445 U.S. 198, 220 n.14, 100 S.Ct. 1095, 1108 n.14, 63 L.Ed.2d 329 (1980).

30. NPDES permits issued for less than the maximum five-year period may be extended up to but not beyond the five-year maximum. *See Costle v. Pacific Legal Foundation*, 445 U.S. at 210 n.10, 100 S.Ct. at 1103 n.10.

31. EPA defendants are required by CWA to take action to issue or deny a new NPDES permit every five years.

32. NPDES Permit No. CA0109991 for the Hyperion treatment plant expired on December 17, 1979, at the latest and EPA defendants, having failed to take action since that time to issue or deny a new NPDES permit for Hyperion, are in violation of CWA.

848

33. When taking action to issue an NPDES permit, EPA defendants are required by CWA to apply the applicable requirements of CWA §§ 1311, 1312, 1316, 1317, and 1343 to each discharge.

34. In issuing an NPDES permit, EPA defendants are required by ESA and implementing regulations to insure that the requirements contained in the permit will not jeopardize the continued existence of any endangered or threatened species.

35. There being no genuine issue as to any material fact, summary judgment is appropriate in this case, and plaintiff is entitled to judgment as a matter of law.

36. Title 33, United States Code, Section 1365 and Title 16, United States Code, Section 1540(g)(4) authorize this Court to award costs of litigation, including reasonable attorneys' fees.

### JUDGMENT

This action came on for hearing on December 7, 1981, on plaintiff's motion for partial summary judgment and defendants' motion to dismiss, strike or, in the alternative, for summary judgment, and evidence having been presented by the parties and all parties having had an opportunity to present any materials relevant to the motions before the Court, and the cause having been argued and submitted for decision and the Court having made findings of fact and conclusions of law as set forth in the attached decision,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, in accordance with the findings of fact and conclusions of law, that there is no genuine issue as to any material fact on the claims presented to and adjudicated by the Court, and that plaintiff Pacific Legal Foundation is entitled to judgment as a matter of law that:

1. plaintiff has standing to challenge defendants' failure to comply with the requirements of the National Environmental Policy Act (NEPA), the Clean Water Act (CWA), and the Endangered Species Act (ESA);

2. plaintiff has satisfied the 60-day notice requirements of 16 U.S.C. § 1540(g)(1)(A) and 33 U.S.C. § 1365(b); and

3. this Court has jurisdiction to hear this action pursuant to 16 U.S.C. § 1540, 33 U.S.C. § 1365, and 28 U.S.C. § 1331.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Environmental Protection Agency (EPA) defendants are required to comply with the provisions of ESA when authorizing, funding, or carrying out programs or activities at the Terminal Island Treatment Plant pursuant to authority of CWA, and that the award of and release of CWA construction grants for the construction of wastewater treatment works is an action to which ESA applies. Having failed to comply with the provisions of ESA prior to awarding the CWA construction grant for the mechanical composting demonstration project at the Terminal Island treatment plant site, EPA defendants are in violation of ESA and are enjoined from awarding or releasing any CWA construction grant funds for such project until such time as the provisions of ESA have been complied with.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that EPA defendants are required to comply with the provisions of NEPA and implementing regulations prior to awarding and releasing a CWA construction grant for the Terminal Island mechanical composting demonstration project. The Court, having found that the subject grant will be utilized for placement and/or construction of additional facilities on the Terminal Island site, declares that the subject grant is for construction of a project which may significantly affect the human environment. EPA defendants, having failed to prepare the necessary environmental documents, are in violation of the requirements of NEPA and are hereby enjoined from awarding or releasing any CWA construction grant funds for said project until the requirements of NEPA have been satisfied.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that EPA de-

fendants are required to comply with the provisions of ESA prior to placing requirements on, authorizing, or funding any activities or programs at the City of Los Angeles Hyperion Wastewater Treatment Plant (Hyperion). EPA defendants, having failed to comply with the provisions of ESA as set forth in the attached findings of facts and conclusions of law filed herewith, are hereby enjoined from awarding or releasing CWA construction grant funds for construction of alternative sludge management programs at Hyperion including the composting alternative and the energy recovery system until such time as EPA complies with the provisions of ESA.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that EPA defendants are required to comply with the provisions of ESA prior to placing requirements on, authorizing, or funding any programs in the Los Angeles/Orange County Metropolitan Area (LA/OMA) project area. EPA defendants, having failed to comply with the provisions of ESA as set forth in the findings of facts and conclusions of law, are hereby enjoined from awarding or releasing CWA construction grant funds for construction of sludge management programs in the LA/OMA area until such time as EPA complies with the provisions of ESA.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that EPA defendants, having failed to perform their mandatory duties under CWA as set forth in the findings of fact and conclusions of law, shall take action to issue or deny a new national pollutant discharge elimination system permit to the City of Los Angeles for Hyperion within 180 days. Such action shall consider all outfalls within EPA jurisdiction and shall consider all applicable requirements of CWA, including CWA § 301(h).

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that defendants' motion to dismiss, strike or, in the alternative for summary judgment is denied, that the affidavits of Frank M. Cov-

ington and William H. Pierce be stricken from the record, and that plaintiff recover from defendants the costs of litigation (including reasonable attorneys' fees) as specifically authorized by 16 U.S.C. § 1540(g)(4) and 33 U.S.C. § 1365.*

---

* Taxed Costs 4/12/82 $1,445.70.